IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: COLOPLAST CORP.
PELVIC SUPPORT SYSTEM
PRODUCTS LIABILITY LITIGATION         MDL No. 2387

---

THIS DOCUMENT RELATES TO:

*Della Rosenow, et al. v. Mentor Worldwide LLC*        Civil Action No. 2:13-cv-28087

MEMORANDUM OPINION & ORDER

Pending before the court is Defendant's Motion to Compel and in the Alternative to Dismiss [ECF No. 7] filed by Mentor Worldwide LLC ("Mentor"). The plaintiffs have not responded, and the deadline for responding has expired. Thus, this matter is ripe for my review. For the reasons stated below, Mentor's Motion is **GRANTED in part** and **DENIED in part**.

I. Background

The case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse and stress urinary incontinence. In the seven MDLs, there are approximately 42,000 cases currently pending, approximately 140 of which are in the Coloplast MDL, MDL 2387.

In an effort to efficiently and effectively manage this MDL, the court decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all summary judgment

motions, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, the court originally placed this and other cases in Coloplast Wave 3.[1] Pretrial Order ("PTO") # 123, at 12 [ECF No. 5].

Managing multidistrict litigation requires the court to streamline certain litigation procedures in order to improve efficiency for the parties and the court. Some of these management techniques simplify the parties' discovery responsibilities. PTO # 123, for example, provides that each plaintiff in Wave 3 must submit a Plaintiff Fact Sheet ("PFS").[2] PTO # 123, at 2. The plaintiffs, however, did not comply with PTO # 123 in that they wholly failed to submit a completed PFS, and on this basis, defendant now seeks dismissal of their case with prejudice.

## II. Legal Standard

Federal Rule of Civil Procedure 37(b)(2) allows a court to sanction a party for failing to comply with discovery orders. *See* Fed. R. Civ. P. 37(b)(2) (stating that a court "may issue further just orders" when a party "fails to obey an order to provide or permit discovery"). Before levying a harsh sanction under Rule 37, such as dismissal or default, a court must first consider the following four factors identified by the Fourth Circuit Court of Appeals:

> (1) Whether the noncomplying party acted in bad faith; (2) the amount of prejudice his noncompliance caused his adversary, which necessarily includes an inquiry into the materiality of the evidence he failed to

---

[1] Subsequently, the court moved this and other cases into Coloplast Wave 4. Order, Aug. 1, 2017 [ECF No. 12].

[2] Similarly, PTO # 124 provides that each plaintiff in Wave 4 must submit a PFS. PTO # 124, at 2 [ECF No. 1261], *In re Coloplast Corp., Pelvic Support Sys. Prods. Liab. Litig.*, No. 2:12-md-02387, http://www.wvsd.uscourts.gov/MDL/2387/orders.html.

2

produce; (3) the need for deterrence of the particular sort of noncompliance; and (4) the effectiveness of less drastic sanctions.

*Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (citing *Wilson v. Volkswagen of Am., Inc.*, 561 F.2d 494, 503–06 (4th Cir. 1977)).

In applying these factors to the case at bar, I must be particularly cognizant of the realities of multidistrict litigation and the unique problems an MDL judge faces. Specifically, when handling seven MDLs, containing thousands of individual cases in the aggregate, case management becomes of utmost importance. *See In re Phenylpropanolamine Prods. Liab. Litig.*, 460 F.3d 1217, 1231 (9th Cir. 2006) (emphasizing the "enormous" task of an MDL court in "figur[ing] out a way to move thousands of cases toward resolution on the merits while at the same time respecting their individuality"). I must define rules for discovery and then strictly adhere to those rules, with the purpose of ensuring that pretrial litigation flows as smoothly and efficiently as possible. *See id.* at 1232 ("[T]he district judge must establish schedules with firm cutoff dates if the coordinated cases are to move in a diligent fashion toward resolution by motion, settlement, or trial."); *see also* Fed. R. Civ. P. 1 (stating that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

In turn, counsel must collaborate with the court "in fashioning workable programmatic procedures" and cooperate with these procedures thereafter. *In re Phenylpropanolamine*, 460 F.3d at 1231–32. Pretrial orders—and the parties' compliance with those orders and the deadlines set forth therein—"are the engine

3

that drives disposition on the merits." *Id.* at 1232. And a "willingness to resort to sanctions" in the event of noncompliance can ensure that the engine remains in tune, resulting in better administration of the vehicle of multidistrict litigation. *Id.*; *see also Freeman v. Wyeth*, 764 F.3d 806, 810 (8th Cir. 2014) ("The MDL judge must be given 'greater discretion' to create and enforce deadlines in order to administrate the litigation effectively. This necessarily includes the power to dismiss cases where litigants do not follow the court's orders.").

III. Discussion

Pursuant to PTO # 123, each plaintiff in Wave 3 was ordered to complete and serve a PFS on defendants by May 20, 2017.[3] PTO # 123, at 2. Although all other deadlines for Coloplast Wave 3 cases were stayed, the PFS due date of May 20 remained in place.[4] *See* PTO # 126, at 1 [ECF No. 6].

According to defendant, the plaintiffs failed to submit a PFS within the court-ordered deadline. As of the date of this Order, the plaintiffs have not submitted a PFS, making it more than 151 days late. Accordingly, pursuant to PTO # 123, defendant now moves for dismissal of the plaintiffs' case with prejudice.

Applying the *Wilson* factors to these facts and bearing in mind the unique context of multidistrict litigation, I conclude that although recourse under Rule 37 is

---

[3] Similarly, pursuant to PTO # 124, each plaintiff in Wave 4 was ordered to complete and serve a PFS on defendants by May 20, 2017—the same deadline applicable to Wave 3 plaintiffs. PTO # 124, at 2.

[4] Similarly, although all other deadlines for Coloplast Wave 4 cases were stayed, the PFS due date of May 20 remained in place. *See* PTO #127, at 1 [ECF No. 1277], *In re Coloplast Corp., Pelvic Support Sys. Prods. Liab. Litig.*, No. 2:12-md-02387.

4

justified, the plaintiffs should be afforded one more chance to comply with discovery before further sanctions are imposed.

The first factor, bad faith, is difficult to ascertain, given that the plaintiffs have not responded. This indicates a failing on the part of the plaintiffs, who have an obligation to provide counsel with any information needed to prosecute their case. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 634 n.10 (1962) ("[A] civil plaintiff may be deprived of his claim if he failed to see to it that his lawyer acted with dispatch in the prosecution of his lawsuit."). Furthermore, as set forth in PTO # 2, "[a]ll attorneys representing parties to this litigation . . . bear the responsibility to represent their individual client or clients." PTO # 2, at ¶ E [ECF No. 10], *In re Coloplast Corp., Pelvic Support Sys. Prods. Liab. Litig.*, No. 2:12-md-02387. This includes awareness of and good faith attempts at compliance with all PTOs and other court orders. PTO # 12, which was jointly drafted by the leadership counsel of both parties, expressly states that any plaintiff who fails to comply with PFS obligations may, for good cause shown, be subject to sanctions. PTO # 12, at ¶ 2(d)[5] [ECF No. 40], *In re Coloplast Corp., Pelvic Support Sys. Prods. Liab. Litig.*, No. 2:12-md-02387. The plaintiffs nevertheless failed to comply. Although these failures do not appear to be callous, the fact that they were blatant and in full knowledge of the court's orders and discovery deadlines leads me to weigh the first factor against the plaintiff. *See In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 496 F.3d 863, 867 (8th

---

[5] PTO # 105 subsequently amended PTO # 12. The language in section 2(d), however, was not affected. *See* PTO # 105 [ECF No. 572], *In re Coloplast Corp., Pelvic Support Sys. Prods. Liab. Litig.*, No. 2:12-md-02387.

5

Cir. 2007) ("While not contumacious, perhaps, this is a blatant disregard for the deadlines and procedure imposed by the court, [and t]herefore, we conclude that the [plaintiffs] did not act in good faith.").

The second factor—prejudice caused by noncompliance—also leans toward the order of sanctions. Without a PFS, defendant is "unable to mount its defense because it [has] no information about the plaintiff or the plaintiff's injuries outside the allegations of the complaint." *In re Phenylpropanolamine*, 460 F.3d at 1234. Furthermore, because the defendant has had to divert attention away from timely plaintiffs and onto this case, the delay has unfairly impacted the progress of the remaining plaintiffs in MDL 2387.

The adverse effect on the management of the MDL as a whole segues to the third factor, the need to deter this sort of noncompliance. When parties fail to comply with deadlines provided in pretrial orders, a domino effect develops, resulting in the disruption of other MDL cases. From the representations of defendant's counsel, a considerable number of plaintiffs have failed to supply a timely PFS. Consequently, the court expects to have to evaluate and dispose of a significant number of motions similar to the one at bar, thereby directing its time and resources to noncompliant plaintiffs at the expense of other plaintiffs in this MDL. This cumbersome pattern goes against the purpose of MDL procedure, and I must deter any behavior that would allow it to continue. *See* H.R. Rep. No. 90-1130, at 1 (1967), *reprinted in* 1968 U.S.C.C.A.N. 1898, 1901 (stating that the purpose of establishing MDLs is to "assure the uniform and expeditious treatment" of the included cases).

6

Application of the first three factors demonstrates that this court is justified in sanctioning the plaintiffs. However, application of the fourth factor—the effectiveness of less drastic sanctions—counsels against the relief sought by defendant. Rather than imposing harsh sanctions at this time, the court opts for a lesser sanction and allows the plaintiffs one more chance to comply, subject to dismissal, upon motion by the defendant, if they fail to do so. This course of action is consistent with PTO # 12, which warned plaintiffs of the possibility of dismissal upon failure to submit a timely PFS. *See* PTO # 12 ¶ 1(i).

Alternative lesser sanctions, such as the ones proposed in Rule 37(b)(2)(i)–(iv), are simply impracticable, and therefore ineffective, in the context of an MDL containing approximately 140 cases. The court cannot spare its already limited resources enforcing and monitoring sanctions that are qualified by the individual circumstances of each case, nor would it be fair for the court to place this responsibility on defendant. Therefore, considering the administrative and economic realities of multidistrict litigation, I conclude that affording the plaintiffs a final chance to comply with discovery, subject to dismissal if they fail to do so, is a "just order" under Rule 37 and in line with the Federal Rules of Civil Procedure as a whole. *See* Fed. R. Civ. P. 1 (stating that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

## IV. Conclusion

It is **ORDERED** that Defendant's Motion to Compel and in the Alternative to Dismiss is **GRANTED in part** to the extent defendant seeks an order compelling production of the PFS and **DENIED in part** and without prejudice as to the remaining relief. It is further **ORDERED** that the plaintiffs must serve their completed PFS on Mentor on or before **November 17, 2017**. Failure to comply with this Order may result in dismissal upon motion by the defendant. Finally, it is **ORDERED** that plaintiffs' counsel send a copy of this Order to the plaintiffs via certified mail, return receipt requested, and file a copy of the receipt.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: October 18, 2017

_____
JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE